***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in the Pre-trial Agreement as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the defendant and the plaintiff at all relevant times herein.
3. Defendant is self insured for worker's compensation purposes with Constitution State Service Company acting as its servicing agent.
4. On February 9, 1998 Curtis Lee Jester sustained a compensable injury by accident to his lower back with pain radiating into his left leg while lifting a heavy sandblasting machine while at work for defendant.
6. On February 9, 1998 plaintiff's average weekly wages from defendant were $400.00 per week, yielding a weekly compensation rate of $266.68.
7. Plaintiff's accident resulted in total disability beginning on February 11, 1998.
8. Defendant agreed to pay and plaintiff agreed to accept total disability compensation benefits at $266.68 per week beginning February 11, 1998 and continuing for necessary weeks.
9. Commission Proceedings Leading to Hearing, consisting of 21 pages, may be received into evidence as documents filed with the Commission.
10. Plaintiff's medical records, consisting of 67 pages, may be received into evidence in the sense that each provider would so testify as contained in the medical record.
11. The issue to be determined from the hearing before the Deputy Commissioner is:
 a) Whether plaintiff should be allowed to change his treating physician to a physician of his choice.
 ***********
The Pretrial Agreement and all stipulations are hereby herein incorporated as though they were fully set out.
 ***********
Based on the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 44 years old and had a high school education.
2. Plaintiff has a long employment history beginning in 1973, primarily as an automobile mechanic.
3. In 1977 he was employed by defendant as a mechanic. His normal and usual duties for defendant consisted of repairing equipment or engines and required mostly standing and walking, with frequent bending and lifting up to about 80 pounds.
4. In 1993 plaintiff underwent a discectomy to repair a ruptured disc at the L4-5 level of his spine. Plaintiff's chief complaints prior to the surgery were low back and left leg pain. The surgery was successful and plaintiff was able to return to work.
5. On February 9, 1998 plaintiff and another employee of defendant were lifting a heavy sandblaster when plaintiff suffered an acute onset of low back pain radiating into his left leg down to his foot.
6. On February 9, 1998 plaintiff sought treatment at Baptist Hospital's Emergency Room where he was referred to a Winston-Salem neurosurgeon. On February 14, 1998 he saw his family physician, Davey B. Stallings, who practices in Rural Hall, N.C.
7. Defendant sent plaintiff to Greensboro orthopedic surgeon Jeffrey Beane who first saw plaintiff on February 19, 1998. Plaintiff's lifting of the sandblaster caused a soft tissue low back injury and a left L5 radiculopathy superimposed on preexisting lateral recess stenosis or narrowing of the spinal canal, as well as being superimposed on preexisting degenerative disc disease at the L4-5 level, with scar tissue at that level. Plaintiff's lifting of the sand blaster exacerbated and made symptomatic the preexisting non-symptomatic conditions.
8. Plaintiff's February 9, 1998 injury by accident to his back caused plaintiff to suffer moderate to severe lower back and left leg pain made worse with any period of sustained physical activities, and improved by lying down and somewhat relieved by pain medication. These symptoms continued through at least the date of the hearing before the Deputy Commissioner.
9. At the March 11, 1998 office visit note, Dr. Beane wrote as follows:
 This will be a difficult case and I explained this to him. It will be markedly different than his previous operation, given that it is complicated by his disc degeneration.
10. In April 1998 Dr. Beane referred plaintiff for physical therapy treatments that initially helped improve his condition but then made it worse.
11. On April 6, 1998 the adjusting agent's nurse wrote Dr. Beane notifying him that "in the event of physician referral, we reserve the right to approve the referral and would ask that it be discussed with us prior to being discussed with the patient. Please call the Full Commission for authorization."
12. Both Dr. Beane and Winston-Salem neurosurgeon Charles Branch felt plaintiff's condition would not be improved by surgery. Plaintiff suffered from myofascial back pain caused by his lifting the sandblaster rather than being caused by his underlying condition.
13. In September 1998 Dr. Beane referred plaintiff to Dr. Bartko for consideration of soft-tissue injury management.
14. In October 1998 Dr. Beane, in response to the adjusting agent's nurse's inquiry, rendered an opinion that plaintiff's inability to work was due to his lifting injury rather that his underlying condition.
15. In early November 1998 Dr. Bartko evaluated plaintiff. Dr. Bartko recommended ambulation to promote weight loss and cessation of smoking.
16. On November 24, 1998 Dr. Bartko saw plaintiff again and wrote that in his opinion plaintiff was at maximum medical improvement. Dr. Bartko wrote that he "discussed this [plaintiff's return to work restrictions] with his [plaintiff's] insurer" and that he also "discussed [an FCE] with his [plaintiff's] insurer who will think more on this."
17. On March 3, 1999 the adjusting agent's nurse spoke with the adjusting agent's adjuster "regarding direction of care and what specific needs were involved. She requests I [nurse] schedule an FCE."
18. On March 4, 1999 the adjusting agent's nurse contacted the adjuster again and told her that she would set up an FCE as soon as Dr. Bartko prescribed one. The nurse advised the adjuster to contact Dr. Bartko and inquire about the FCE and to suggest the FCE be conducted at HealthSouth.
19. On March 4, 1998 the nurse was informed by the adjuster that the FCE was set up for March 16, 1999 at HealthSouth, to be followed by an appointment with Dr. Bartko for March 24, 1999.
20. On March 5, 1999, Dr. Bartko, at the request of the adjuster, prescribed an FCE for plaintiff.
21. On March 24, 1999 the adjusting agent's nurse spoke with Denise at HealthSouth to "request some documentation that IW [injured worker] was there for FCE that at whatever point it occurred, he refused to proceed because of pain and FCE was terminated."
22. On March 24, 1999 Dr. Bartko, after seeing plaintiff, telephoned the adjusting agent's nurse and told her that plaintiff got no further on his FCE than a musculoskeletal assessment due to pain. He told the nurse he would "dictate his exam today and expedite the transcription" to expedite the scheduling of an MRI.
23. In July 1999 defendant, through counsel, moved the Commission for entry of an order compelling plaintiff to submit to Dr. Bartko as his treating physician.
24. In August 1999 plaintiff, through counsel, opposed defendant's motion and moved the Commission to approve an evaluation of plaintiff by a Forsyth County pain specialist or back surgeon.
25. In September 1999 plaintiff objected to Dr. Bartko's being approved by the Commission as his primary treating physician due to Dr. Bartko's alleged ex parte communications with defendant's adjusting agent. Plaintiff requested a hearing before the Deputy Commissioner seeking that another physician be approved to assume his care. On this record the Full Commission does not find that Dr. Bartko's ex parte
communications were improper.
26. On April 18, 2000 plaintiff made a motion for plaintiff to be evaluated by a Winston-Salem physiatrist James McLean, who ultimately declined to evaluate plaintiff.
27. Plaintiff has no confidence in Dr. Bartko.
28. Plaintiff's injury cannot presently be improved with surgery. Dr. Bartko has indicated that he has nothing to offer plaintiff for the relief of his pain and that plaintiff had completed his treatment with him, but plaintiff continues to have pain in his left leg and back. This is the very reason that Dr. Beane sent plaintiff to Dr. Bartko because Dr. Beane did not have any further treatment he could offer plaintiff, and he was seeking an alternative to attempt to get plaintiff some pain relief. All of plaintiff's treating physicians agree that plaintiff continues to have pain but they do not know how to treat it at this point. Therefore, continued conservative management of his condition under the direction of plaintiff's family physician Davey Stallings is reasonable.
 *********** CONCLUSIONS OF LAW
1. Defendant's motion to have Dr. Bartko remain or continue to be plaintiff's treating physician should be denied. N.C. Gen. Stat. §97-25.
2. Plaintiff's family physician Davey Stallings should be approved to assume the medical care for plaintiff's back injury of February 9, 1998 and defendant should pay for this treatment. N.C. Gen. Stat. § 97-25.
3. Effective October 26, 2000, defendant should withhold every fourth weekly disability compensation benefit due plaintiff and pay the same to Mr. Walden as his authorized attorney's fee for his legal services to plaintiff. N.C. Gen. Stat. § 97-90.
 *********** AWARD
1. Defendant's motion to have Dr. Bartko remain or continue to be plaintiff's treating physician is hereby denied.
2. Defendant shall pay for the medical treatment to be provided to plaintiff by Dr. Stallings who is hereby approved to assume plaintiff's medical care for his back injury of February 9, 1998.
3. Effective 60 days from the filing date hereof, defendant shall withhold every fourth weekly disability compensation benefit due plaintiff and pay the same to Mr. Walden as his authorized attorney's fee for his legal services to plaintiff.
4. Defendant shall pay all costs.
This 18th day of February 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER